UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRIME TIME TOYS, LTD., | ) |
| | ) 2008-CV-2909 (NRB/GWG) |
| Plaintiff, | ) (ECF CASE) |
| | ) |
| v. | ) |
| | ) |
| JAKKS PACIFIC, INC., | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO FED. R. CIV. PR. 12(c)

**FEDER, KASZOVITZ, ISAACSON,
 WEBER, SKALA, BASS & RHINE LLP**
Larry Miller (LM-8323)
Attorneys for Defendant
JAKKS Pacific, Inc.
750 Lexington Avenue
New York, New York 10022-1200
Tel:    (212) 888-8200
Fax:    (212) 752-4632

August 20, 2008

**Table of Contents**

**Page**

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 1

    The '642 Patent as issued ............................................................................................. 1

    History of the '642 Patent ............................................................................................ 2

ARGUMENT ...................................................................................................................... 10

THE COMPLAINT SHOULD BE DISMISSED
PURSUANT TO FED. R. CIV. PR. 12(C ) ........................................................................ 10

    A.    The Legal Standard ........................................................................................ 10

    B.    Because The Disclosure And Specification Do Not Support
         Or Enable The Term "Adjacent", Independent Claim 13
         Of The '642 Patent Is Invalid Pursuant To 35 U.S.C. 112, Paragraph 1. ............. 10

         1.    Claim 13 fails to satisfy the requirement of 112P1 because
              the term "adjacent" is not supported by the description ........................... 13

         2.    Claim 13 fails to satisfy the requirement of 112P1 because the term
              "adjacent" is not enabled by the original application .............................. 15

CONCLUSION ................................................................................................................... 16

## Table of Authorities

**Cases**                                                                                                           **Page**

*Balbuena v. Mattingly*,
    2007 U.S. Dist. LEXIS 72517 (S.D.N.Y. Sept. 28, 2007)......................................................1

*In re Barker*,
    559 F.2d 588 (C.C.P.A. 1977), *cert. denied*, 434 U.S. 1064 (1978)..................................14

*Biagro Western Sales, Inc. v. Helena Chem. Co.*,
    160 F. Supp. 2d 1136 (E.D. Cal. 2001)..................................................................................1

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
    489 U.S. 141 (1989)............................................................................................................12

*In re Brana*,
    51 F.3d 1560 (Fed. Cir. 1995)............................................................................................12

*Brass v. Am. Film Techs., Inc.*,
    987 F.2d 142 (2d Cir. 1993)..................................................................................................1

*Burns v. Int'l Serv. v. International Union*,
    47 F.3d 14 (2d Cir. 1994) ...................................................................................................10

*CFMT, Inc. v. Yieldup Int'l Corp.*,
    349 F.3d 1333 (Fed.Cir.2003).............................................................................................12

*Chiron Corp. v. Genentech, Inc.*,
    363 F.3d 1247 (Fed. Cir. 2004), *cert. denied*, 543 U.S. 1050 (2005).........................10, 11

*Eldred v. Ashcroft*,
    537 U.S. 186 (2003)............................................................................................................11

*Enzo Biochem, Inc. v. Gen-Probe, Inc.*,
    296 F.3d 1316 (Fed. Cir. 2002).....................................................................................11, 13

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
    535 U.S. 722 (2002).....................................................................................................11, 12

*Genentech, Inc. v. Novo Nordisk A/S*,
    108 F.3d 1361 (Fed. Cir. 1997)..........................................................................................13

*Jepson v. Coleman*,
    314 F.2d 533 (C.C.P.A. 1963) ............................................................................................15

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
    433 F.3d 1373 (Fed. Cir. 2006).....................................................................................11, 13

*Lockwood v. American Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997)......................................................................................13

*Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys.*,
    166 F.3d 1190 (Fed. Cir. 1999)......................................................................................12

*PIN/NIP, Inc. v. Platte Chem. Co.*,
    304 F.3d 1235 (Fed. Cir. 2002)......................................................................................10

*Patel v. Contemporary Classics Of Beverly Hills*,
    259 F.3d 123 (2d Cir. 2001)...........................................................................................10

*Playtex Prods., Inc. v. Procter & Gamble Co.*,
    400 F.3d 901 (Fed. Cir. 2005)........................................................................................13

*Schering Corp. v. Amgen Inc.*,
    222 F.3d 1347 (Fed. Cir. 2000)......................................................................................11

*Tronzo v. Biomet, Inc.*,
    156 F.3d 1154 (Fed. Cir. 1998)......................................................................................15

*TurboCare Division of Demag Delaval Turbomachinery Corp. v. General Electric Co.*,
    264 F.3d 1111 (Fed. Cir. 2001)......................................................................................11

*Univ. of Rochester v. G.D. Searle & Co.*,
    358 F.3d 916 (Fed. Cir. 2004)........................................................................................10

*Warner-Lambert Co. v. Teva Pharmaceuticals USA, Inc.*,
    418 F.3d 1326 (Fed. Cir. 2005)......................................................................................12

*In re Wilder*,
    736 F.2d 1516 (Fed. Cir. 1984)......................................................................................12

**Statutes**

35 U.S.C. § 103..................................................................................................................5

35 U.S.C. § 112, ¶1.....................................................................................1,3,10,12,13,15

35 U.S.C. § 132 (a) .........................................................................................................11

37 C.F.R. § 1.75(d)(1).....................................................................................................11

Fed. R. Civ. Pr. 12(b)(6) .................................................................................................10

Fed. R. Civ. Pr. 12(c) ..................................................................................................1, 10

# INTRODUCTION

At the conference held on August 6, 2008, the instant motion to dismiss was scheduled to determine the validity of claim 13 of U.S. Patent No. 7,281,642 B2 (the "'642 Patent"); this is without prejudice to any other claims or rights of Defendant. The instant Memorandum Of Law in Support of Motion to Dismiss Pursuant to Fed. R. Civ. Pr. 12(c) is respectfully submitted in support of Defendant's contention that claim 13 is invalid on grounds that the claim fails to satisfy the requirements of 35 U.S.C. § 112, paragraph 1 ("112P1"). The crux of the instant motion is that Plaintiff's use of the term "adjacent" in issued claim 13 of the patent is invalid under 112P1 as it is not supported by the specification and drawings of the originally filed application, is not enabling and is inconsistent with concessions that Plaintiff was required to make during the prosecution of the '642 Patent to secure allowance of the '642 patent and to overcome prior art. Pursuant to 112P1, each of the above renders the claim invalid as a matter of law.

# STATEMENT OF FACTS

The pleadings herein contain the relevant record. Miller Decl. at Exh. A (the Complaint), Exh. B (Answer and Counterclaim including the '642 File Wrapper as Exh. 5), Exh. C, (a paginated copy of the '642 File Wrapper), Exh. D, (Answer to Counterclaim), Exh. E, the Henderson Patent, Exh. F, the Sands Patent and Exh. G, the Tagar Patent.[1]

### The '642 Patent as issued

The '642 Patent issued with three independent claims, 1, 5 and 13. '642 Patent at col. 3-4.

---

[1] For the Court's ease of reference, Defendant has attached a paginated copy of the '642 file wrapper as Exhibit C to the Miller Declaration; the document is otherwise identical to Exh. 5 to Defendant's Answer and Counterclaims; Defendant has also attached copies of prior art cited by the Patent Examiner, as Exhibits D through F of the Miller Declaration. The '642 patent itself is Exh. D to the Complaint herein. See, e.g., *Balbuena v. Mattingly*, 2007 U.S. Dist. LEXIS 72517 at *14 (S.D.N.Y. Sept. 28, 2007) ("when deciding a Rule 12(c) motion, the court shall consider 'the pleadings and exhibits attached thereto, statements or documents incorporated by reference in the pleadings, matters subject to judicial notice, and documents submitted by the moving party, so long such documents either are in the possession of the party opposing the motion or were relied upon by that party in its pleadings.'" *Quoting Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); see also, *Biagro Western Sales, Inc. v. Helena Chem. Co.*, 160 F. Supp. 2d 1136, 1143 (E.D. Cal. 2001) (copies of two patents filed with the United States Patent and Trademark Office properly considered subject to judicial notice as indisputable (as to authenticity) public records).

Independent claim 1 refers to, in relevant part, a water squirting toy in which "*the toy [is] encased in a soft material along its entire length when in the contracted configuration*, the soft material having a buoyancy sufficient to keep the toy afloat in water when the toy is filled to its maximum capacity with water, *the toy having a cylinder shape and a uniform cross section along its entire length when in the contracted configuration*." '642 Patent at col. 3, lines 4-13.

Independent claim 5 refers to, in relevant part, "A toy for receiving, storing, and squirting water and comprising a tubular housing . . . said tubular housing having a first end and a second end . . . *and said toy . . . comprising an outer shell comprised of a soft material . . . the outer shell covering the entire tubular housing from the first end to the second end to provide the toy with a cylinder shape*, said *tubular housing having a uniform cross-section along its entire length when said chamber is fully contracted.* '642 Patent at col. 3, lines 20-36.

Independent issued claim 13 refers to, in relevant part, "A toy for receiving, storing, and squirting water and comprising a tubular housing defining a chamber for receiving and storing the water, *said tubular housing having a first end and a second end* . . . and said toy . . . comprising an outer shell comprised of a soft material . . . *said outer shell covering the tubular housing **from adjacent** the first end **to adjacent** the second end* . . . said tubular housing having a uniform cross-section along its entire length when said chamber is fully contracted." '642 Patent at col. 4, lines 16-38.

Independent issued claim 13 was not part of the original application as filed. Miller Declaration in Support of Motion to Dismiss, Exh. C at 48-49 (henceforth, Exh. C at ____).

### History of the '642 Patent

As with all patents, the original application for the '642 Patent contains a description, an embodiment and an Abstract. The original application for the '642 Patent did not use the term "adjacent" in the written description or embodiment required by 112P1. Rather, the disclosure uniformly describes a squirting toy "that is *housed* within a polyethylene (PE) closed cell foam

2

*shell*" whose "preferred embodiment … is comprised of a *cylindrical housing*" (File Wrapper, Exh. C at 6).  The Detailed Description of the Preferred Embodiment states: "Tubular shell 138, preferably made of closed-shell polyethylene foam, *surrounds tubular housing 106*, *to provide both a soft protective surface and buoyancy*."  "[T]he *shells* could instead be replaced by blow molded or rotationally molded *air-filled cylindrical bladders*." Exh. C at 8.

The claims of the original application recited, respectively "An *encasement* for a partially hollow squirting toy…." (Original Independent Claim 1) Exh. C at 10; "A toy for receiving, storing, and squirting water and *encased in a soft material* that has a buoyancy sufficient …." (Original Independent Claim 5) Exh. C at 10; "A toy for receiving, storing, and squirting water and comprising a tubular housing … and said toy … comprising *an outer shell* comprised *of a soft material* that has a buoyancy sufficient to keep the toy afloat in water when said expanded chamber is full of water." (Original Independent Claim 9) Exh. C at 10-11.

The Abstract of the original invention discloses "A squirting toy [.] comprised of a cylindrical housing … *encased* within a polyethylene closed cell foam *shell*." Exh. C at 12.

The words "housing," "shell", "surround" and "encase" as used in the disclosure of this '642 patent all describe a squirting toy that is encased in foam.  The verb "house" as used here means to "To contain; harbor."[2]  The word "shell" as used here means a covering that *encases* the squirting toy.[3]  The verb "surround" means "1. To extend on all sides of simultaneously; encircle; 2. To enclose or confine on all sides so as to bar escape or outside communication." (AHD s.v. surround).  The verb "encase" means "To enclose in or as if in a case." (AHD s.v. encase).

---

[2] The American Heritage® Dictionary of the English Language ("AHD"), Fourth Edition, Copyright © 2006 by Houghton Mifflin Company, s.v. house, v. tr.
[3] "1.The usually hard *outer covering that encases* certain organisms, such as mollusks, insects, and turtles; the carapace; 2. A similar outer *covering* on an egg, fruit, or nut; 3. The material that constitutes such a covering." AHD s.v. shell.

3

In short, the entire disclosure—abstract, background description of preferred embodiment, and accompanying drawings—describe a water squirting toy with a tubular housing encased in a soft foam shell similar to resilient cylindrical foam floating devices that Plaintiff refers to as "swimming noodles". Exh. C at 6. The "preferred embodiment" is "a squirting toy comprised of a cylindrical housing…[where] [t]he foam shell . . . is similar in size and shape to a 'swimming noodle' . . . ." Exh. C at 6-7. The "Background and Objects of the Invention" section of the application of the '642 Patent (a) refers to "*a soft* squirting toy that is safer that [sic!] squirting toys of the prior art"; (b) states that the object of the invention is "to provide a squirting toy that is both buoyant and *soft*"; and (c) provides that "such a squirting toy has a similar appearance to a 'swimming noodle'." Exh. C. at 6. Even the "Summary of the Invention" refers to "a squirting toy *housed within* a polyethylene (PE) closed cell *foam shell*." Exh. C at 6.

The drawings of the original application also display a squirting toy surrounded by a soft foam shell.





Exh. C at 13-16.

On September 27, 2006, the Patent Examiner rejected all the claims of the original application on the grounds of obviousness pursuant to 35 U.S.C. § 103, referring, *inter alia*, to U.S. Pat. No. 5,928,053 ("Henderson")[4]: "Henderson shows a water toy for use in a pool that provides buoyancy at 20 by means of encasing the tubular toy in 'foam rubber, cork, Styrofoam or the like' for safety (easy to grasp) and buoyancy (to enable it to float to the surface if dropped)." Exh. C at 32.

In a response filed on November 8, 2006, Plaintiff traversed the Patent Examiner's rejection alleging that the cited references "do not disclose or suggest an expandable and contractible squirting toy where, *inter alia*, the *toy has a cylinder shape* when in the contracted condition, as recited in claim 5, and as similarly recited in claim 9." Exh. C at 42. Plaintiff further argued that its toy was similar to a cylinder shaped "swimming noodle", a floatation device made out of foam, and that its invention was not obvious because "the Henderson patent discloses providing *a foam casing only on the handle portion of the toy*, so that one would not be motivated based on the teaching of Henderson *to encase the entire Sands toy* [U.S. Pat. No. 4,597,527 ("Sands")] *in foam material* to provide the Sands toy with a 'swimming noodle'-type

---

[4] A copy of the Henderson patent is attached to the Miller Declaration, exhibit D.

5

shape." Exh. C at 42.  Plaintiff further distinguished its invention from U.S. Pat. No. 5,231,951 ("Tagar") since "Tagar is directed to mounting a squirting toy on a flotation device, *and is not at all related to encasing such a toy in foam or similar material, or for that matter encasing a toy to provide the toy with a cylinder shape*." Exh. C at 42-43.

On February 8, 2007, Plaintiff filed a supplemental amendment adding a new claim 18, which was an earlier version of the claim that issued as independent claim 13.  This version did not contain the word adjacent but rather described a toy "comprising an *outer shell* comprised of a soft material that has a buoyancy sufficient to keep the toy afloat in water . . . ." Exh. C at 48.

On March 30, 2007, the Patent Examiner issued a final rejection of all claims, including new claim 18 on the grounds of obviousness.  This final rejection repeated the prior grounds for rejection along with an additional ground that the "The Sands toy *has a cylinder shape* 19, over the greatest portion of its length, when the toy is in the contracted configuration." Exh. C at 54-55.

On June 15, 2007, Plaintiff responded by amending its independent claims to describe, in independent claim 5, a toy "*being encased in a soft material along substantially its entire length when in the contracted configuration, the soft material* having a buoyancy sufficient to keep the toy afloat in water when the toy is filled to its maximum capacity with water, the toy having a cylinder shape *and a uniform cross section along substantially its entire length* when in the contracted configuration." Exh. C at 59.  Applicant amended independent claim 9 to describe a toy having an "outer shell covering *substantially* the *entire* tubular housing *from the first end to the second end* to provide the toy with a cylinder shape, *said tubular housing having a uniform cross-section along substantially its entire length when said chamber is fully contracted.* Exh. C at 60.

Finally, Plaintiff also amended its new claim 18 to describe a toy having an "*outer shell*

6

*covering the tubular* **housing from adjacent the first end to adjacent the second end**… [with a] *tubular housing having a uniform cross-section substantially along its entire length when said chamber is fully contracted.*" This was the *first* use of the term "adjacent" with respect to the outer shell. Exh. C at 61.

In arguing that its proposed amendments should be accepted, Plaintiff alleged that "Sands, alone or in combination with Henderson and Tagar, does not disclose or suggest a squirting toy *the cylinder of which is* **encased in a soft material along substantially its entire length** when in a contracted configuration and that has a uniform cross-section along substantially its entire length, *as recited in claim 5, and as similar recited in claims 9 and 18.* Exh. C at 62. To distinguish its invention over the prior art, Plaintiff further argued that "Although the Henderson patent teaches the use of a foam rubber handle 28 on a toy that uses a whipping action to fling water, the handle is only disposed at one end of the toy, and not over substantially the entire length of the toy, as in the claimed invention. Thus, the whipping action of the Henderson toy *presents a hazard to children using the toy since* **the end to be whipped is not encased in a soft material. In contrast, the inventive toy is encased in a soft material, providing a much safer product as compared to the prior art.**" Exh. C at 62-63.

On June 22, 2007, the Patent Examiner sent an Interview Summary of a telephonic conference that took place on June 12, 2007 in which agreement with respect to the claims 5-13 and 15-18 was reached. The examiner stated it had been agreed that adding the limitations 'the toy having a uniform cross section across it's [sic!] entire length when in the contracted configuration' and '*the soft buoyant material encasing the toy along it's* [sic!] **entire length when in the contracted configuration' to all of the independent claims** appears to overcome the prior art as applied. An updated search will be conducted when an amendment after final containing the proposed limitations is filed." Exh. C at 67.

7

The Interview Summary contained an attachment in the form of a facsimile from Plaintiff to the examiner stating that it would "*amend[] the claims to recite that the soft material that encases the toy extends across the entire length of the toy*. The soft material provides both buoyancy and protection from injury. None of the applied references teach this feature. Henderson, for example, teaches the use of a foam rubber handle 28, but the foam rubber is only disposed at one end of the toy. **Thus, the whipping action of the Henderson toy is particularly dangerous, since the end to be whipped is not encased in a soft material**." Exh. C at 69.

Subsequently, a telephonic conversation occurred on July 3, 2007 in which there was a further rejection of the amendments filed by Applicant on June 15, 2007 and in which the Patent Examiner repeated the demand that Plaintiff delete "the term 'substantially' from the independent claims to parallel the claim language previously offered by Applicant's attorney." Exh. C at 83.

On July 10, 2007, Plaintiff filed amendments of independent claims 1, 5 and 13 eliminating the word "substantially" from them as follows:

> 5.    An expandable and contractible toy for receiving and storing water when disposed towards an expanded configuration, and squirting water when disposed towards a contracted configuration, the toy being encased in a soft material along ~~substantially~~ its entire length when in the contracted configuration, the soft material having a buoyancy sufficient to keep the toy afloat in water when the toy is filled to its maximum capacity with water, the toy having a cylinder shape and a uniform cross section along ~~substantially~~ its entire length when in the contracted configuration.
>
> 9.  A toy for receiving, storing, and squirting water and comprising a tubular housing defining a chamber for receiving and storing the water, said tubular housing having a first end and a second end, said chamber having means for expansion or contraction and said housing having a hole to allow communication between said chamber and the outside environment, whereby said toy is adapted to inhale the water through said hole while said hole is submerged during said expansion of said chamber, and said toy is adapted to exhale the water through said hole during said contraction of said chamber, and further comprising an outer shell comprised of a soft material that has a buoyancy sufficient to keep the toy afloat in water when said expanded chamber is full of water, the outer shell covering ~~substantially~~ the entire tubular housing from the first end to the second end to provide the toy with a cylinder shape, said tubular housing having a uniform cross-section along ~~substantially~~ its entire length when said chamber is fully contracted.

8

> 18. A toy for receiving, storing, and squirting water and comprising a tubular housing defining a chamber for receiving and storing the water, said tubular housing having a first end and a second end, said chamber having means for expansion or contraction and said housing having a hole to allow communication between said chamber and the outside environment, whereby said toy is adapted to inhale the water through said hole while said hole is submerged during said expansion of said chamber, and said toy is adapted to exhale the water through said hole during said contraction of said chamber, and further comprising an outer shell comprised of a soft material that has a buoyancy sufficient to keep the toy afloat in water when said expanded chamber is full of water, said outer shell covering the tubular housing from adjacent the first end to adjacent the second end, said chamber comprising a cylinder and said means for expansion and contraction of said chamber being a piston sealingly engaging said chamber's interior cylindrical surface, said piston adapted for longitudinal movement within and relative to said cylinder to alternately expand and contract the volume within the chamber, said tubular housing having a uniform cross-section ~~substantially~~ along its entire length when said chamber is fully contracted.

Exh. C at 70-73.

The '642 Patent issued on October 16, 2007.

# ARGUMENT

**THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. PR. 12(C )**

    A.    **The Legal Standard**

At any time after the pleadings close and before the trial commences, a party may move for a judgment on the pleadings under Rule 12(c). Judgment on the pleadings is appropriate if the movant is entitled to judgment as a matter of law. *Burns v. Int'l Serv. v. International Union*, 47 F.3d 14, 16 (2d Cir. 1994); see also *Patel v. Contemporary Classics Of Beverly Hills*, 259 F.3d 123, 125-126 (2d Cir. 2001) (standards for Rule 12(c) motion are the same as for motion pursuant to 12 (b)(6). The Federal Circuit has stated that a "patent can be held invalid for failure to meet the written description requirement, based solely on the language of the patent specification." *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 927 (Fed. Cir. 2004); see also *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1248 (Fed. Cir. 2002) (concluding that the written description requirement was not met as a matter of law and therefore the claim in question was invalid).

    B.    **Because The Disclosure And Specification Do Not Support Or Enable The Term "Adjacent", Independent Claim 13 Of The '642 Patent Is Invalid Pursuant To 35 U.S.C. § 112, Paragraph 1.**

Section 112P1 provides that a patent specification:

> shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

As set forth in *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253, (Fed. Cir. 2004), *cert. denied*, 543 U.S. 1050 (2005), 112P1 does not allow for new matter. There the Court found that "[t]he 1984 application does not support the new matter added to the *'561 patent* and thus does not satisfy the written description requirement." The Court added "[t]he written description requirement prevents applicants from using the amendment process to update their disclosures

10

(claims or specifications) during their pendency before the patent office." Id. at 1255; *accord*, *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 433 F.3d 1373, 1375 (Fed. Cir. 2006) (Lourie, J., concurring), ("Both a written description *and* a disclosure of how to make and use the invention, as well as the best mode of carrying it out, are required by the statute."); *TurboCare Division of Demag Delaval Turbomachinery Corp. v. General Electric Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001) ("When the applicant adds a claim or otherwise amends his specification after the original filing date, ... the new claims or other added material must find support in the original specification."); *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1352 (Fed. Cir. 2000) ("The fundamental inquiry is whether the material added by amendment was inherently contained in the original application."). *See also* 35 U.S.C. § 132 (a) ("No amendment shall introduce new matter into the disclosure of the invention."); 37 C.F.R. § 1.75(d)(1) ("The claim or claims must conform to the invention as set forth in the remainder of the specification and the terms and phrases used in the claims must find clear support or antecedent basis in the description so that the meaning of the terms in the claims may be ascertainable by reference to the description").

The written description requirement "is the *quid pro quo* of the patent system; the public must receive meaningful disclosure in exchange for being excluded from practicing the invention for a limited period of time". *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 296 F.3d 1316, 1330 (Fed. Cir. 2002); *see also Eldred v. Ashcroft*, 537 U.S. 186, 216 (2003) ("immediate disclosure is not the objective of, but is *exacted from,* the patentee") (emphasis added); *LizardTech*, *supra*, 433 F.3d at 1375 ("The whole purpose of a patent specification is to disclose one's invention to the public. It is the *quid pro quo* for the grant of the period of exclusivity. The need to tell the public what the invention is, in addition to how to make and use it, is self-evident. One should not be able to obtain a patent on what one has not disclosed to the public.").

As set forth in the Supreme Court decision in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 736 (2002) a patent application is required "to describe,

11

enable, and set forth the best mode of carrying out the invention. . . . These latter requirements must be satisfied before issuance of the patent, for exclusive patent rights are given in exchange for disclosing the invention to the public." The requirements of 112P1 are "part of the delicate balance the law attempts to maintain between inventors, who rely on the promise of the law to bring the invention forth, and the public, which should be encouraged to pursue innovations, creations, and new ideas beyond the inventor's exclusive rights." *Id.*, 535 U.S. at 731 referring to *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 150 (1989).

Thus, the requirement of a written description of the invention is distinct from and not coterminous with the enablement requirement. *See, e.g.*, *In re Wilder*, 736 F.2d 1516, 1520 (Fed. Cir. 1984). "It is not necessary that the claimed subject matter be described identically, but the disclosure originally filed must convey to those skilled in the art that applicant had invented the subject matter later claimed." *Id.*

The enablement provision of the Patent Act requires that the patentee provide a written description of the invention "in such full, clear, concise, and exact terms as to *enable* any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same." 112P1. The purpose of this requirement is to ensure that "the public knowledge is enriched by the patent specification to a degree at least commensurate with the scope of the claims." *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999).

Accordingly, the Federal Circuit has "held that the specification must provide sufficient teaching such that one skilled in the art could make and use the full scope of the invention without undue experimentation." *Warner-Lambert Co. v. Teva Pharmaceuticals USA, Inc.*, 418 F.3d 1326, 1336 -1337 (Fed. Cir. 2005) quoting *CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1338 (Fed.Cir.2003); *In re Brana*, 51 F.3d 1560 (Fed. Cir. 1995) (the specification must

teach those of skill in the art "how to make and how to use the invention *as broadly as it is claimed*") (emphasis supplied); *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997) ("It is the specification, not the knowledge of one skilled in the art, that must supply the novel aspects of an invention in order to constitute adequate enablement.").

### 1. Claim 13 fails to satisfy the requirement of 112P1 because the term "adjacent" is not supported by the description

As set forth in *Lizardtech, supra*, 433 F.3d at 1375, "[P]atent practitioners know that the first substantive portion of a patent specification (other than a brief summary and background) is a disclosure of what the claimed invention is. No one writes a patent application by beginning with statements like 'I make my invention as follows' or 'I use my invention in the following manner.' A patent specification always begins with a statement like 'My invention consists of the following,' or its equivalent. Then there follows a fuller written description of what the invention is, whether it is a machine, an electronic device, a chemical compound (or, more usually, a group of compounds), or a genetic sequence (or sequences). Only then does one find material relating to enablement, telling how to make and use the invention." *See, e.g.*, *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 909 (Fed. Cir. 2005).

The Federal Circuit held that "the written description requirement is satisfied by the patentee's disclosure of 'such descriptive means as words, structures, figures, diagrams, formulas, etc., that fully set forth the claimed invention.'" *Enzo Biochem, supra*, 296 F.3d at 1329 quoting *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).

Here, as set forth above, the written description in the original application contains **no explicit or implicit disclosure** of a water toy with an "*outer shell covering the tubular housing*

*from adjacent* the first end *to adjacent* the second end". See Exh. C. Quite the contrary, the written description is of a soft shell which surrounds the tubular housing. The "adjacent language" of claim 13 was inserted by amendment on June 15, 2007, subsequent to the final rejection issued on March 8, 2007. Neither the word "adjacent" nor its equivalent is to be found explicitly or implicitly in the background, description, drawings, abstract or specification of the invention that was the subject of the original application.

*In re Barker*, 559 F.2d 588, 593 (C.C.P.A. 1977), *cert. denied*, 434 U.S. 1064 (1978), is precisely on point. There, the Court held "We can find no indication in the specification or claims as originally filed that appellants invented the subject matter now claimed…." The concurrence of Judge Rich in *In re Barker*, 559 F.2d at 594 (J. Rich concurring) is on all fours with the instant matter, where he states: "The basic problem here is simple: new matter ... was inserted by amendment and the claim contains that new matter. It therefore lacks support and must be rejected."

The sole embodiment put forward by Plaintiff describes a squirting toy in which a soft foam shell **"surrounds"** the tubular housing. Exh. C at 8 ("*Tubular shell 138*, preferably made of closed-cell polyethylene foam, *surrounds tubular housing* 106, to provide both a soft protective surface and buoyancy."). The original application only discloses or describes a water squirting toy encased in a soft shell. *See, e.g.*, Exh. C at 10, 12 (repeating various forms of the verb "encase" six times to describe a toy encased in soft foam); see also, the original drawings, Exh. C at 13-16.

As such, claim 13 is invalid because the term "adjacent" is new matter not supported by any "indication in the specification or claims as originally filed." *Barker*, *supra*, 559 F.2d at 593.

### 2. Claim 13 fails to satisfy the requirement of 112P1 because the term "adjacent" is not enabled by the original application

As set forth above, the original application only teaches a squirting toy encased in a soft foam shell. As such, the term "adjacent" is not enabled by the original application, as the disclosure is not sufficient to enable one skilled in the art to make and use the invention claimed in independent claim 13. *See, e.g.*, *Jepson v. Coleman*, 314 F.2d 533, 536 (C.C.P.A. 1963) (enablement is "not a question of whether one skilled in the art might be able to construct the patentee's device from the teachings of the disclosure. . . . Rather, it is a question whether the application necessarily discloses that particular device."). The original application only enables a squirting toy encased in a soft foam shell and not one in which the soft foam shell covers the tubular housing from adjacent the first end to adjacent the second end.

One of the objects of the invention, which Plaintiff used to distinguish it over the prior art, is that it is **safer** than, for instance, the toy described in the Henderson patent, a tubular toy whose handle is encased "in foam rubber, cork, Styrofoam or the like' for safety" because the other "tubular element" in Henderson "is not encased in a soft material. In contrast, the inventive toy is encased in a soft material, providing a much safer product compared to the prior art." Exh. C at 62-63; *see also* Exh. C at 6 ("It is a further object to provide a soft squirting toy that is safer that squirting toys of the prior art.").

This is dispositive pursuant to *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159-1160 (Fed. Cir. 1998). There, in identical circumstances, the court held, "Instead of suggesting that the '589 patent encompasses additional shapes, the specification specifically distinguishes the prior art as inferior and touts the advantages of the conical shape of the '589 cup." Here, too, the specification provides for encasement as being safer and thereby excludes other configurations that do not surround and encase the tubular housing.

15

In sum, the presentation of a squirting toy whose tubular housing is "encased" or "surrounded" by a soft foam shell is incompatible with the cover being adjacent to and not encasing the tubular housing.

## CONCLUSION

For all the foregoing reasons, the motion to dismiss pursuant to Fed. R. Civ. Pr. 12(c) should be granted in its entirety.

Dated: August 20, 2008

                        Respectfully submitted,

                        **FEDER, KASZOVITZ, ISAACSON,**
                          **WEBER, SKALA, BASS & RHINE LLP**

                        By:  /s/    Larry Miller
                        Larry Miller (LM-8323)
                        Attorneys for Defendant
                        JAKKS Pacific, Inc.
                        750 Lexington Avenue
                        New York, New York 10022-1200
                        Tel:    (212) 888-8200
                        Fax:    (212) 752-4632